JAMI L. FERRARA
Attorney at Law
California State Bar No. 189109
550 West B Street, 4th Floor
San Diego, California  92101
Telephone:  (619) 239-4344
Email: jamiferrara@msn.com

Attorney for Mr. Foster

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ALEXANDER BRIAN FOSTER,<br><br>        Defendant. | Case No.  23CR0111-JLS<br><br>Date:  April 28, 2023<br>Time:  9:00 a.m.<br><br>DEFENDANT'S SENTENCING<br>MEMORANDUM |

TO:        RANDY S. GROSSMAN, UNITED STATES ATTORNEY,
        ALEXANDRA FOSTER, ASSISTANT UNITED STATES ATTORNEY, AND
        CYNTHIA ORNELAS, UNITED STATES PROBATION OFFICER

        Alexander Brian Foster, the defendant in this case, by and through his
counsel, Jami L. Ferrara, Esq., and pursuant to Third Revised General Order No. 350,
hereby files his sentencing memorandum.

//

//

//

//

//

//

//

# I.

## __THE INDIVIDUAL BEFORE THE COURT__

In 2017, Alexander (Alex) Brian Foster made a decision to accept a job offer that he will regret for the rest of his life.  He had recently relocated to San Diego, after having lived and worked in Santa Cruz for several years, to be closer to his family, especially his two young daughters who were living with their mother, his ex-wife.  Presentence Report, hereinafter PSR, 14-15.  He had worked for many years in the film industry as a camera operator and did not think it would be hard to find a job in the industry in San Diego.  Id.  It turns out that he was wrong and for months, he was unable to find work and unable to meet his child support obligations.  PSR 11.

Mr. Foster was finally offered a job as a camera operator after applying for a job he found on Craigslist.   The ad did not specify that the job was with an adult entertainment company that ran several websites, including Girls Do Porn (GDP).  When it was disclosed in the interview, he decided to accept the job because it was local and it paid enough that he could resume paying child support for his daughters.   Doing so irrevocably changed the course of Mr. Foster's life and he wishes that he could go back in time and walk out of that room and continue looking for any other job possible.

During the course of his employment at GDP, Mr. Foster was asked to create and edit a video to discredit women and their attorneys who were suing GDP.  PSR 5.  Mr. Foster was given a script and directions from his bosses, Michael Pratt and Matthew Wolfe, and he was told that he would be paid extra for working on the video.  PSR 8-9.  Until that time, Mr. Foster had been led to believe that the lawsuit was unfounded and that it was a money grab by dissatisfied performers in videos created for GDP and other websites created by the company.  PSR 11.  Mr. Foster spent hours reviewing depositions and transcripts to create the video (which was never completed and never released on the internet), earning overtime that he planned to use to support himself when he left the company.  While he was doing

that, he realized that he had been misled by Pratt and Wolfe and that they were, in fact, the bad guys, not the plaintiffs in the lawsuit.  In October 2019, GDP's headquarters were raided and an indictment was handed down in a related case, 19CR4488-JLS.   The work on the video ended, along with his job.

Mr. Foster was not charged in the related case and, in the four years since 2019, he has been steadily rebuilding his life, thinking that he had put his time at GDP behind him.  He eventually found a new career in marketing and has started to finally have some financial stability.  PSR 17.  He shares custody of his daughters with his ex-wife and spends time with his parents, who live locally.

The past, however, continues to haunt Mr. Foster.  Even while working at GDP, he was conflicted by the work he was doing – he was depressed about not being able to work in what he considered to be the legitimate film industry and he was uncomfortable working in pornography and then having to go home to care for his two young daughters.  He began to have panic attacks, which continue to this day, and at times, was suicidal.  PSR 15.  He started seeing a therapist in 2018 when his panic attacks increased in intensity and he realized that he needed profesisonal help. Id.

His choices in working for GDP and his actions in working on the video, the basis for this case and his guilty plea, are a constant source of guilt and regret for Mr. Foster.  He has always been cooperative with the Government, both at the time of the initial take-down of GDP and recently, starting in the fall of 2022 when the Government decided to move forward in this case against him.  He remains willing to help in the investigation and prosecution of the related case.  While he cannot take back the work he did at GDP nor his association with the company, he is deeply remorseful for any part he played in victimizing the women who came to GDP under false pretenses.  And he is even more sorry for having worked on the video, knowing that it would cause significant harm and emotional distress to the women suing GDP. //

Mr. Foster takes full responsibility for his actions in this case.  <u>See</u> Appendix A, Letter from Mr. Foster.  He would do anything to take it all back and never be associated at all with GDP.  The shame will never leave him.  He hopes that the Court can see how remorseful he is and how he has tried to change his life for the better.  He grew up thinking he would work in the film industry for his entire career and with this one terrible choice to work for GDP, he lost any chance he had to be a camera operator again for a legitimate company.  He knows that his shame and regret do not hold a candle to that of the suffering of the victims of GDP and he does not pretend to know how to make anything better for them.  He hopes that his taking responsibility for contributing to the harm against them is some small form of recompense.

Since the end of his employment in 2019, Mr. Foster has shown that his actions while working for GDP were an aberration – he has found work in a completely different field, has stayed out of trouble and focused on raising his daughters.  He had never been in trouble before his work with GDP and intends on never getting into trouble again.  His conduct in this case was aberrant and very different from the abhorrent conduct of the other defendants charged in the related case.

The Sentencing Guidelines, as set forth in the plea agreement, call for a sentence in the range of 12-18 months.[1]  The Government and the Probation Office have recommended 12 months in custody.  Mr. Foster asks the Court to consider a non-custodial sentence, one that will allow him to work and continue to share custody of his children.  A term probation, with a condition of home confinement, with a strict curfew, coupled with community service and, if so ordered, restitution //

---

[1] The plea agreement allows Mr. Foster to ask for additional downward adjustments, departures and variances.  Plea Agreement at 10.

1 and/or a fine, is a sufficiently significant punishment to impose in this case, especially
2 given his post-offense rehabilitation over the last four years.

3

4 **II.**

5 **OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT**

6 *A.*     *Mr. Foster Objects to the Inclusion of Certain Information in the*
7       *Offense Conduct Section of the PSR*

8       Mr. Foster objects to the following information as being unrelated to the
9 charges and his conduct in working on the video that is the basis for the charge
10 against him:

11            -page 5, conversations between Mr. Foster and Mr. Pratt on May 10, 2019
12            and June 11, 2019;

13            -page 6,  conversation between Mr. Foster and Mr. Pratt on June 14,
14            2019;

15            -page 7, conversations between Mr. Foster and Mr. Pratt on July 16, 2019,
16            September 12, 2019;

17            -page 8, conversation between Mr. Foster and Mr. Pratt on September 29,
18            2019

19 None of these conversations have anything to do with Mr. Foster's work on the video
20 and are not relevant to the matter in which Mr. Foster appears before the Court.  Mr.
21 Foster was not charged with any crime related to his work as a cameraman at GDP,
22 nor do these conversations offer any insight into the crime to which he pled guilty.

23 *B.*      *Corrections and Clarifications to the PSR*

24            -page 14, paragraphs 45-46: Mr Foster's mother's name is JEAN, not
25            Gene.

26            -page 16, paragraph 68: Mr. Foster received a high school diploma from
27            Rancho Bernardo High School in 2004.  He completed his credits at a
28            home school program as a part of Poway Unified Schools, but states that

1  the diploma that he received was from Rancho Bernardo High School.
2  He does not know why his high school diploma was unable to be verified.

### III.

### RECOMMENDED SENTENCING GUIDELINES

Mr. Foster recommends the following Sentencing Guidelines calculation under the terms of the Plea Agreement:

Base Offense Level          18  [U.S.S.G. §§ 2X1.1, 2A6.2]

Minor Role                  -2  [U.S.S.G. § 3B1.2(b)]

Acceptance of Resp.         -3  [U.S.S.G. § 3E1.1]

***Adjusted Offense Level      13***

Mr. Foster is in a Criminal History Category I. PSR 13.   He has no criminal history.  Id.

The plea agreement allows Mr. Foster to request any additional downward adjustments, departures and variances.  Plea Agreement at 10.  He waives his right to appeal his sentence.  Plea Agreement at 11.  He may collaterally attack his sentence on the basis of ineffective assistance of counsel only.  Id.

Mr. Foster pled guilty on the day of his initial appearance and was released on bond at that time.  PSR 1.  He has one day of custody credit.  Id.

### IV.

### SENTENCING RECOMMENDATION

The Supreme Court and the Ninth Circuit have made clear that when sentencing a defendant, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the sentencing factors detailed in 18 U.S.C. § 3553(a). United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)).   Section 3553 first states that a district court "shall impose a sentence sufficient, but not greater than

necessary." 18 U.S.C. § 3553(a).  The district court is directed to consider "the nature and circumstances of the offense" and "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  Next, the district court must consider the need for the sentence imposed:

-to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
-to afford adequate deterrence to criminal conduct
-to protect the public from further crimes of the defendant
-to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(2).  Additionally, the district court must consider the kind of sentences that are available.  18 U.S.C. § 3553(a)(3).

An analysis of all the 18 U.S.C. § 3553(a) factors demonstrates that a sentence of home confinement with a requirement that he perform a substantial number of hours of community service is a "sufficient but not greater than necessary" sentence in Mr. Foster's case.  The paragraphs below address the specific factors outlined in 18 U.S.C. § 3553(a):

***The nature and circumstances of the offense:*** In 2019, Mr. Foster, at the direction of his bosses, Michael Pratt and Matthew Wolfe, worked to create a video that was meant to cause substantial emotional distress to women who had civilly sued Girls Do Porn (and related companies) for fraud in relation to their recruitment to appear in adult videos.  PSR 4.  The video was never completed nor released on the internet.  It was discovered during the prosecution of Pratt, Wolfe and others in a related case, 19CR4488-JLS.  Mr. Foster did not write the script for the video (Mr. Pratt did) or actively film the victims (as requested by Mr. Pratt).  PSR 8-11.  Mr. Foster knew that by helping Mr. Pratt and Mr. Wolfe to create this video, he would be harming the victims in the civil lawsuit.  Mr. Foster agreed to do this work for financial reasons, to earn extra money to support himself and his family.  PSR 11.

***The history and characteristics of the defendant:*** Mr. Foster is 37 years old.  PSR 14.  He has two daughters, ages 12 and 9, who he co-parents with his ex-

wife.  Id.  He is close to his parents, who live in San Diego, and his brother, who currently lives and works in Brazil.  Id.  Other than his actions in this case, he has never been in any sort of trouble before.  PSR 13.

Mr. Foster spent his early years in Los Angeles, where his father worked in the film industry.  Id.  His family moved to New Orleans for several years and then to San Diego when Mr. Foster was 13 years old.  Id.  He attended school in San Diego and met his (now ex-) wife here, as well.  He started working in the film industry as a teenager and had a busy career as a camera operator, videographer and production assistant through 2017.  PSR 17-18.  In 2017, he returned to San Diego to be closer to his children, who had moved back to San Diego in 2014 with their mother after she and Mr. Foster divorced.  PSR 14-15.  After many months of unsuccessfully looking for a job in San Diego and worried that he would not be able to help support his daughters, Mr. Foster took a job with GDP, leading to his involvement in the instant offense.

Mr. Foster is now working in marketing for a local company and excelling at his job.  He has no interest in ever working in the film industry again.  He is focused on his job and his daughters.  He has strong support from his family, friends and co-workers.  See Appendix B, Letters in Support of Mr. Foster.

***The seriousness of the offense/respect for the law/just punishment:*** Mr. Foster understands that he committed a serious offense and knows that he must be punished for his actions.  A sentence of home confinement with a community service component, as requested in this Memorandum, is sufficient to reflect the seriousness of the offense, provide just punishment and promote respect for the law.  Mr. Foster has learned a very hard lesson making choices based on financial need and compromising his morals and values.  Considering the facts of Mr. Foster's case, the fact that he was not charged in the related sex-trafficking case and that four years have passed since that case was issued, with no further criminal behavior by Mr. Foster, a sentence of home confinement is sufficient, but not more than necessary.

***Adequate deterrence/protect the public:*** Mr. Foster has been deterred from future criminal conduct.  He is 37 years old, with a felony conviction, after a lifetime of good behavior, facing time in prison.  He recognizes that his poor judgment has put him in this position and that his choices to work for GDP and work on the video that is the basis for this case are his and his alone.  He will regret his time at GDP for the rest of his life.  He has spent the last four years trying to move forward in a new career and being a good father.  He has no intention of ever doing anything illegal again.  He is not a threat to the public.

***Educational/vocational training/medical care, etc:*** If sentenced to time in custody, Mr. Foster would like to participate in educational programs and vocational training while he serves his sentence.  He has no medical needs at this time.

***The kind of sentence available:*** This Court has the ability to sentence Mr. Foster to a term of probation, or up to 5 years in prison, followed by one to three years of Supervised Release.  PSR 19-20.

**V.**

**CONCLUSION**

For the reasons stated above, Mr. Foster asks this Court to sentence him to 12 months of home confinement, with a community service component, as a condition of five years of probation.

Respectfully submitted,

*S/Jami L. Ferrara*

Dated:  April 24, 2023            JAMI L. FERRARA
Attorney for Mr. Foster

## APPENDIX A

## LETTER FROM MR. FOSTER

Dear Judge Sammartino,

My name is Alexander Foster.  I am 37 years old and have two daughters, ages 9 and 12. I am a single parent, and I have shared custody of my daughters with my ex-wife Natalie since 2016. I love my daughters, and I've done my best to be a good father. I am so proud watching them grow way too fast into lovely young ladies.

My relationship with my former wife is the key to our success. When we decided to divorce we never went to court to get an official child support hearing. I just agreed to pay $3000 a month, which I could afford at the time because I had good consistent work. Soon after Natalie decided to move back to San Diego to be closer to our parents who are so amazing and helpful with the girls. I hated  living so far away from them,  and having to get on a plane every week to see them. So I decided to move from Santa Cruz back to San Diego. Natalie and I are friends and co-parent well together to this day.

When I arrived back in San Diego, I struggled to find work as quickly as I had hoped and began to fall behind on my child support payments. Luckily, Natalie was as supportive and patient as possible.  Natalie and I talk frequently, do not argue, and although not together as a couple, we have together created a warm and loving environment for our daughters. I have an immense amount of respect for Natalie. She is the kindest and most caring mother you could ever have.

In my attempt to provide financial support for my girls, I took a job as a videographer and editor with a company that I knew nothing about that advertised on CraigsList.

Taking that job turned out to be the biggest mistake of my life.  I had constant misgivings about the nature of the work that caused me great concern and anxiety.  For the first time in my life, I was so conflicted I started seeing a therapist in January 2018.  I saw her twice each month for an entire year.  The topics of our discussions were always my dissatisfaction with my job.  Seeing young women doing those things for money was a constant reminder of my own situation.

When I was asked if I wanted to earn some extra money at work I saw a potential way to afford to leave.  When I said yes, I was asked to edit video footage about the court case the company and the men I worked for were involved in.  This footage covered things that happened before I started working at the company.

The only thing I knew about their court case was the version told by my employers.  They told me that they and the company were the victims of girls who now saw a chance to make more money by making false accusations about the company that had originally filmed them.

I was given the script shortly after. The title of the video was very crude and designed to be disturbing and attention-getting.  As I started to edit the video, I watched the actual depositions of the girls involved in the case.  The more I watched, the more I knew that I was working for the bad guys. The video project I  was editing now appeared to be a delusional rant by the owner.  I actually titled the project as that on our server, which got me reprimanded.

As I learned more about the men and the company I was working for, my desire to leave increased.  I was asked  to film some additional footage for the video, but I declined the offer. They then asked me to reach out to my contacts at MSNBC where I used to work,  to find

someone who would film the extra footage. I told them I would look for someone, but I never did. Soon after, the office was raided, and criminal charges were filed against them.

I was actively looking for another full-time job so that I could afford to leave. I had no intention of remaining at the company nor finishing that video, but the charges came before I had the chance to leave. I acknowledge my role in furthering the video project, and for that, I have taken responsibility.

Shortly after charges were filed against my former bosses, I found a lawyer. Through the lawyer, I offered the federal prosecutors to reach out to me if they would like to speak.

I was not contacted about the case until two years later when I got a knock on my door, and it became apparent that I was being looked at for criminal charges My heart sank. Since then, I have cooperated in every way possible way with the federal prosecutors and the FBI. I told them exactly what happened from my point of view.

Your honor, I am a good and honest person. Watching those deposition videos of those girls made me sick. The fact that I contributed to a company that would do such a thing is disgusting to me. The fact that I was stupid enough to believe the owners has been a life-changing lesson I will never forget. I've held this shame for years. I've lost lifelong friends. When people find out about my past, I have so much shame I end up never seeing them again.

This experience made me despise the field of video production that I had spent my whole life pursuing. My father always preached to me the importance of working in a field you have passion for, so to prove myself, I decided to start over.

I've been working hard to provide for my family. I found a job in another field I have been interested in. I found a job at a Golf/Technology company that is a world leader in its field. I have been promoted twice and just accepted a promotion to join the marketing department making that my third promotion in just under two years. For the first time in my life, my family and I are not living paycheck to paycheck. We're able to plan trips together and enjoy life without the constant cloud of financial struggle hanging over our heads.

I'm dedicated to becoming a better man for my children, and I will guide my girls through the good and bad times that life throws at them. I will love every single second of time I have with them for the rest of my life.

I hope you can see through the media attention and the disgust of the men who perpetrated the crimes. I hope you can see me as a good person who made a big mistake. A mistake that, no matter what you decide, will follow me for the rest of my life. I would like to apologize to the court, the victims, and anyone else that may have been affected by my actions. I will most likely never be able to fully forgive myself for this.

I am hoping that the court will judge my total character, see that I was mislead about the court case and did not understand what the company had been doing, and ultimately allow me to remain the main provider for my two young daughters.

Sincerely,
Alexander Foster

**APPENDIX B**

**LETTERS IN SUPPORT OF MR. FOSTER**

Your Honor;

I am Stan Foster, father of Alex Foster. My son is a good person that made a huge mistake. Alex has made the decision to take full responsibility for his actions and I am extremely proud of him for doing so.

I'd like you to know that this transgression is very much out of character for Alex. This behavior doesn't accurately reflect the person that he is today nor the person he has been over his 38 years.

Alex has a loving and caring nature. As a son, he has always looked out for his mother and I, offering his assistance and thinking about our wellbeing. I've had some medical setbacks recently and at 73 years of age I need his assistance now more than ever.

Alex has been an outstanding father to his two young daughters. Alex is deeply involved in the girls' lives and I see first-hand how they thrive on their interactions with their father. The girls need this strong father figure as a constant presence at this critical time in their lives.

I am encouraged by the positive action Alex has taken action to rebuild his life. Professionally, he has been able to establish a new career with a major company here in San Diego. In two years with the company he has received multiple promotions and the salary and benefits are providing long-term economic security for his young family. With this positive new career, Alex has demonstrated that he can establish a strong, new financial foundation and can be a contributing member of society moving forward.

I am praying that justice can be served in this case without undoing the foundation he has been able to establish. I am hopeful that there are other legal avenues available that will allow Alex to pay his debt for his transgressions without incarceration.

Most of all, I hope and pray that you can find it in your heart to not take this loving father away from his two young daughters that need their father's steady guidance and presence in their lives.

Respectfully,

Stan Foster

Dear Judge Sammartino,

As the mother of Alex Foster, I am writing this letter to express our son's deep remorse for his actions and to ask for leniency in his sentencing.

Alex has never been involved in any criminal activity prior to or since this job in question. Our son is truly sorry for his actions, and he understands the gravity of the situation. He has expressed deep regret for his role and he is committed to making things right.

This time in his life was out of character for Alex and the actions of a man in severe financial stress which is why he took this job. Alex sought professional help during his employment and worked with a life coach to help strengthen and guide him.

Alex has been a dedicated father to his two children, and shares 50/50 custody as well as after-school care expenses, medical expenses, etc. He is committed to continuing counseling and has expressed a genuine desire to learn from his mistakes and become a stronger person. Alex is respected in his place of employment and continues to provide for his family and his dad who has had recent medical challenges. He is a kind, compassionate, and hardworking young man and father who made a terrible mistake.

Although Alex has a lot of work to do to make amends, we ask that you take into consideration our son's deep regret and the steps he has taken to make things right. We believe that he is truly sorry for his actions and that he will continue to work hard to improve himself and make positive contributions to society. Thank you for your time and consideration.

Sincerely,

Jean Foster

Honorable Judge,

I am writing this letter to express support and ask for leniency on behalf of my brother, Alex Foster.  I will attempt to share with you the brother I know, have grown up with and what I know about the man and father he has become.

My name is Adam Foster, Alex's oldest and only sibling.  We are close in age and I have been with my brother since his birth.  Being close in age, we would often hang out together, have many common friends, and have lived close to each other nearly our entire lives.  I have a deep understanding of his character and the caliber of person he is today.

Alex is a loving father that has done whatever it takes to provide for his family.  As a family, we moved more than a few times growing up, and he was the one constant in my life.  As a young man, he was hardworking, honest, trust-worthy and always caring and empathetic.  He has grown into a man that I am proud to call my brother.  He is a fine example for his daughters, even tempered, never had an issue with drugs or alcohol, and always put his personal relationships second to the well-being of his kids and family.  He has no criminal history.  His entire life, Alex has been and is today a genuinely good person.  He is generous to those less fortunate and always willing to help out when needed.  Alex has always been a hard worker, and is committed to continuing to grow professionally and contribute positively to his community.

I want to assure you that my brother is taking full responsibility for his actions and is willing to make amends. He understands the gravity of his mistakes and is committed to continuing the positive changes in his life.  He has struggled with the circumstance and his involvement in this ordeal, and is actively working on addressing the issues that led to his poor decision-making in this instance.  I also want to assure you that this incident was the exception, not the normal for my brother.  I understand that my brother's actions may have caused harm, and I am deeply sorry for any pain that may have been caused. However, I ask that you consider his character and his history as a positive influence for myself, his family and friends, and his community.  I love my brother, and more than that, he has been my best friend since he was born.  Alex is a valuable part of the community and a foundation of support for his daughters and family.

Thank you for taking the time to read this letter, and I appreciate your consideration.


Sincerely,

Adam Foster

Dear Honorable Judge,

I am writing this letter to speak on behalf of my ex-husband, Alex Foster, and his qualities as a father, provider, and co-parent to our two beautiful girls. Despite the difficulties in our marriage that led to our divorce, I believe that he is a great father who deserves recognition for his positive contributions to our family.

Since our separation, we have shared equal custody of our daughters, and he has been actively involved in their upbringing. He is always available for them and makes sure that their needs are met. We have a parenting schedule that we both adhere to, which has been very helpful in keeping our girls' lives stable and structured.

One of our daughters suffers from anxiety, and he has been instrumental in providing emotional support for her. He is attentive to her needs and makes sure that she feels safe and secure in his care. Both of our daughters would be  devastated if they were to lose their father's presence in their life's.

I can attest to his dedication to our family and his unwavering commitment to co-parenting our children. We both prioritize our children's needs and work together to make sure they are happy and healthy. We have put our differences aside to ensure that our daughters are not caught in the middle of any conflicts.

Despite our past differences, I know that he is a trustworthy and reliable person. He has spoken to me about his remorse for the mistakes he has made in the past and how they have affected his friendships and relationships on every level. He is committed to making amends and becoming a better person for our family.

In conclusion, I urge you to consider my ex-husband's qualities as a father, provider, and co-parent to our children. I believe that he is an essential part of our family and his presence is important to our children's well-being. He has made mistakes in the past, but he is working hard to make up for them and be a positive influence in our children's lives.

Thank you for taking the time to consider my letter.

Sincerely,

Natalie Foster

Dear Judge Sammartino,

I am Alex's Aunt, Joan Schauf. It is with a deep and wounded soul that I write this letter.

I never in a million years thought Alex would make such a bad choice in life. But, I was not in his shoes. I do not have two beautiful daughters to try and keep under my roof, provide for them and love them as he does.

I do know he was at rock bottom. Scrambling to find a way to provide for them at this time in his life.

Yes. He made some bad decisions. Yes. He was naive to believe what he was told by this company. And mostly, he is remorseful. And will carry this burden for the rest of his life.

Should he pay for this by going to prison? I think not. He is not a career criminal and made this one-time mistake. His girls need him. His family needs him.

Thank you for listening.

Respectfully

Joan Schauf

To Whom It May Concern,

My name is Matt Gargula, the Support Department Manager for _____ . I would like to offer a character reference for Alex Foster.

I have worked with Alex Foster since he was hired onto my team on 08/02/2021. He was originally hired to fill an entry level customer service role here.  Alex has displayed an excellent work ethic. He has shown that he cares about providing great customer service for our customers. He also works to improve the processes and operations that he is a part of here at our company.

He was promoted to a product operations specialist role within months of working for me. Then, shortly after that he was promoted again to a Sr. Product Operation Specialist. This was because of the care and effort Alex applies to the responsibilities entrusted to him. From the vantage point I have here as the Manger over the team, and Alex in specific, I can see the impact he has on those around him. He operates with intentionality and empathy. Our customers who interact with him have expressed similar feelings and appreciation of him over the years here as well.

On a personal level, Alex has added a playful and fun atmosphere here on the team as well. He knows when to be serious and work, but he also knows how to make work fun. We have all appreciated the experience of having him on the team. He and his teammates have developed strong friendships, inside and outside of work, which has shown great levels of trust between them all.

He has greatly prioritized family as well. He speaks of his daughters regularly and has taken time from work to care for them when it was needed. We allow him, when he requests, to work from home to provide time with them when they have days off from school. He has also adjusted his work schedule to attend school events. As a manager over him, I feel that his prioritization of his family is respectable, and I encourage it when he asks.

Alex has always been a passionate person, but when working with our customers and our team members he is able to display control and restraint in order to communicate with care. I feel in our field, being able to display this type of control over your emotions and temper is a strong character attribute. This shows he is an intentional person. He knows how to display empathy for those around him and sympathize with their situations. He works to let them know that their concerns matter to him, and he works to resolve their problems as if he was the one experiencing them directly. As his manager, this is something I feel is admirable and am pleased with his continued involvement in my team.

I appreciate you taking the time to consider my experiences with Alex Foster, and hope that my character reference allows you to understand him better.

Thanks,


Matt Gargula

3/24/3023

Dear Judge Sammartino,

I am writing this letter on behalf of my friend and coworker, Alex Foster, to express my strong support for him and his character. I have had the pleasure of knowing Alex for several years now, and I can confidently say that he is one of the most hardworking, honest, and compassionate individuals that I have had the pleasure of meeting.

As a colleague, Alex is incredibly dedicated to his work, often putting in long hours to ensure that he meets his deadlines and delivers high-quality results. He is always willing to lend a helping hand to his teammates, and he takes pride in being a reliable and trustworthy member of our team. In the year and a half that he has been at Foresight he has moved from an entry-level position to the highest position in our department. Our team would not be the same without him.

Beyond his professional accomplishments, Alex is also an exceptional parent to his two daughters, who I have personally met on a number of occasions. He is deeply committed to their well-being and takes an active role in their upbringing, along with providing financial support for anything they may need. He prioritizes spending quality time with them and treats them with the love and support they need to thrive.

I have also had the pleasure of meeting Alex's parents. Alex's family life is stable and loving, which is a testament to his ability to now prioritize what truly matters in his life. He is a devoted father & son who consistently puts the needs of his loved ones first. He is a source of strength and inspiration to those around him, and his positive attitude and unwavering commitment to doing what is right uplifts everyone he encounters.

In summary, I believe that Alex is a valuable member of our community, and I strongly urge you to take into consideration his work ethic, honesty, parenting, family life, and the positive impact he has on those around him when making any decisions related to his case. He is not a person who should be removed from the system, but rather a person who will continue to contribute to society.

Thank you for your time and consideration.

Sincerely,

Dylan Baker

Your Honor:

I'm sending this letter requesting leniency on behalf of Alex Foster, who will be convicted later this month. I have been his friend, and a friend of the family for more than 15 years.

Alex has always shown a very kind nature, he's a great father and a loyal friend, and has never had any issues with drugs or alcohol. I believe him to be honest, trust-worthy, caring, and genuinely a good person.

He sincerely regrets his actions and vows never to repeat them, this is so far outside of a character it was surprising to hear of it in the first place. I believe him because I know him well and humbly request a lenient sentence as time in jail will put his family in severe difficulty. Thank you for taking the time to read my letter.

Sincerely,
Brett Beals